# In the United States Court of Federal Claims

FRANCISCO A. VILLALOBOS,

               *Plaintiff*,

v.

THE UNITED STATES,

               *Defendant*.

No. 23-391C
(Filed February 3, 2025)

Emily Iroz Rich, Perkins Coie LLP, Washington, DC, for plaintiff.

Anne M. Delmare, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying the Government's Motion to Dismiss**

**SILFEN,** *Judge.*

    Francisco Villalobos alleges that, during his time as an inmate at the Federal Correctional Institution in Herlong, California, he spent time in the so-called special housing unit as a punishment for behavior during incarceration. He alleges that, while he was in the special housing unit, the prison staff took his personal property as a matter of course, did not return it, and instead made it available for public distribution and use by other inmates. He argues that the government's actions constitute a taking under the Fifth Amendment of the Constitution.

    The government moves to dismiss for lack of subject-matter jurisdiction—arguing that Mr. Villalobos's complaint alleges a tort and that the court therefore lacks jurisdiction under 28 U.S.C. § 1491(a)(1) and 31 U.S.C. § 3723—and for failure to state a claim—arguing that he fails to allege that his property was seized for a public purpose.

1

Mr. Villalobos plausibly alleges that the prison took his property and made it available for public use in the prison library and for distribution to other inmates. The court thus **denies** the government's motion to dismiss.

## I.      Background

According to the complaint, in December 2021, while incarcerated, Mr. Villalobos was sent to the special housing unit due to a misconduct investigation. ECF No. 25 at 2 [¶5]; *see* ECF No. 28 at SAppx4-7 (discipline hearing officer report). Typically, when an inmate enters the special housing unit, prison employees remove his personal property from his cell, inventory all items, and transport those items to special housing storage or, if there is not room there, to the receiving and discharge department. ECF No. 25 at 2-3 [¶7]. That process is designed to keep the inmate's property for him, not for the government to further punish the inmate by keeping his property. ECF No. 33 at 11:22-24 (oral argument transcript, counsel for the government stating that the prison "stored [his property] for him for safekeeping"); *id.* at 34:3-8.

In January 2022, the prison released Mr. Villalobos from the special housing unit and gave him a bag purporting to contain all the personal property gathered from his cell. ECF No. 25 at 3 [¶8]. According to Mr. Villalobos, a number of items were missing, including a pair of Nike sneakers, a pair of Timberland boots, a portable radio, headphones, apparel, books, magazines, his GED certificate and award, family pictures, and legal documents. *Id.* Mr. Villalobos alleges that his missing items were worth about $444.30. *Id.* Mr. Villalobos unsuccessfully tried to find his property by raising the issue with special housing unit employees and the prison's associate warden. *Id.* at 3-4 [¶¶9-11]. They told him that his property was not in the special housing storage, and the associate warden advised him to file a tort claim and related lost property forms through the Bureau of Prisons' administrative process. *Id.* at 4 [¶¶10-14].

Based on the associate warden's advice to file a lost property claim, Mr. Villalobos believed that the prison had lost his property. ECF No. 25 at 4 [¶¶10-14]. He filed several claims in January and May 2022, including a tort claim under 31 U.S.C. § 3723. ECF No. 25 at 4 [¶¶10-14]; ECF No. 28 at SAppx8-15. The Bureau of Prisons denied his claims in October and November 2022. ECF No. 25 at 4 [¶15]; ECF No. 28 at SAppx13-15.

Mr. Villalobos later learned from two other inmates that the special housing unit had not lost his items; rather, prison employees had placed them in the receiving and discharge department and the prison's library while he was in the special housing unit. ECF No. 25 at 5-6 [¶¶16-30]. One inmate told Mr. Villalobos that he saw several of Mr. Villalobos's items, some with Mr. Villalobos's name on them, in the receiving and discharge department's storage area, which serves as a repository for inmates to take items to replace lost property or as a reward for serving as informants. *Id.* at 5-6 [¶¶18-21]. Another inmate told Mr. Villalobos that it was the prison's policy not to inventory inmates' books and magazines when the inmates enter the special housing unit; instead, the staff sends those items for placement in the prison's library. *Id.* at 6 [¶22].

Mr. Villalobos visited the library and found three books that belonged to him, each with his name inside the cover. ECF No. 25 at 6-7 [¶¶23-25]; ECF Nos. 15-4, 15-5, 15-6. He also visited the receiving and discharge department to try to confirm that his items were available for public distribution; while there, an employee confirmed that the prison can issue unclaimed inmate property to other inmates, often to replace lost or stolen belongings. ECF No. 25 at 7-8 [¶¶26-27]. The employee also told him that if his property had been taken to the receiving and discharge department and left unclaimed for more than 90 days, the staff would have placed it in the general storage area for distribution to other inmates under the local Bureau of Prisons policy. *Id.* at 8 [¶28]. The

3

employee stated that she was too busy to search the storage for Mr. Villalobos's items. *Id.* at 8 [¶29].

No prison employee told Mr. Villalobos that his property was taken to the receiving and discharge department or the prison library. ECF No. 25 at 8 [¶30]. He still has not received his property. ECF No. 33 at 28:17-23. The prison has not compensated him for it. ECF No. 25 at 8 [¶31].

Mr. Villalobos filed suit pro se in this court in March 2023 alleging a taking. ECF No. 1. After the government moved to dismiss (ECF No. 8), he moved to file an amended complaint (ECF No. 15). With his consent, the court referred Mr. Villalobos to the court's pro bono referral program, and he is now represented by counsel. ECF Nos. 18-20. Mr. Villalobos filed an amended complaint (ECF No. 25), and the government then moved to dismiss the amended complaint (ECF No. 28).

## II.    Discussion

The government moves to dismiss Mr. Villalobos's amended complaint for lack of subject-matter jurisdiction and for failure to state a claim, under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). ECF No. 28. The government argues that Mr. Villalobos's complaint alleges a tort, placing his complaint outside this court's jurisdiction, and that he does not plausibly plead a Fifth Amendment taking because he fails to allege a public purpose for the government's seizure of his property. *Id.* at 7-13; ECF No. 31 at 3-6.

On a motion to dismiss for lack of subject-matter jurisdiction under this court's rule 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better*

4

*Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

On a motion to dismiss for failure to state a claim under rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257; *Iqbal*, 556 U.S. at 679). A party must plead "only enough facts to state a claim to relief that is plausible on its face … [to] nudge[] [a] claim[] across the line from conceivable to plausible" to avoid dismissal under RCFC 12(b)(6). *Twombly*, 550 U.S. at 570.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Constitution amendment V. To find a taking, a court must first determine whether a claimant held a legally cognizable property interest and then must decide whether the government's action amounted to a compensable taking of that property interest. *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002). That duty "applies

… to personal property." *Horne v. Department of Agriculture*, 576 U.S. 350, 357 (2015). "While a taking often occurs as a result of a physical invasion or confiscation, … [r]eal property, tangible property, and intangible property all may be the subject of takings claims." *Conti v. United States*, 291 F.3d 1334, 1338-39 (Fed. Cir. 2002) (citations omitted); *see also, e.g.*, *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (stating that the plaintiff's barges were tangible personal property that could be the subject of takings claims); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (holding that intangible property, such as the plaintiff's trade secrets, could be the subject of takings claims). A takings claim "is founded upon the Constitution and [is] within the jurisdiction of the Court of [Federal] Claims to hear and determine." *Knick v. Township of Scott*, 588 U.S. 180, 190 (2019) (cleaned up).

### A.   Mr. Villalobos's complaint alleges a taking, not just a tort

As an initial matter, no one argues that prisoners are categorically excluded from bringing takings claims for seizure of their property—personal or otherwise—while they are in prison. The court is not aware of any such exclusion, and at oral argument the government agreed that there is no such exclusion. ECF No. 33 at 17:2-7.

The government argues that Mr. Villalobos's complaint alleges only a tort, and this court's jurisdiction is limited to claims against the United States "not sounding in tort." ECF No. 28 at 9-11 (citing 28 U.S.C. § 1491(a)(1)). The government's argument is based on the premise that Mr. Villalobos's items were lost or negligently distributed to other inmates. *Id.*; ECF No. 31 at 4-5. Because Mr. Villalobos alleges that his items were intentionally taken for use in the prison library or for rewards to other inmates, he plausibly alleges a taking, not just a tort.

### B.   The court has jurisdiction over Mr. Villalobos's takings claim as alleged

The government also argues that the prison took Mr. Villalobos's items under its police power, and items seized under the police power cannot be the basis for a takings claim. ECF No. 33

at 33:12-34:3; *id.* at 11:20-24. The Federal Circuit has explained that when the government takes property under its police power, that is not compensable as a Fifth Amendment taking. *Acadia Technology, Inc. v. United States*, 458 F.3d 1327, 1331-33 (Fed. Cir. 2006); *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153-55 (Fed. Cir. 2008).

But here, Mr. Villalobos's property was not "seized pursuant to … criminal laws" or as "evidence in a criminal investigation or as the suspected instrumentality of a crime." *Acadia Technology*, 458 F.3d at 1331. The government has not shown—in the context of a motion to dismiss—that the prison retained Mr. Villalobos's property under its police power or otherwise kept his property as a punishment. *Cf. Mallet-El v. United States*, No. 21-cv-1263, 2021 WL 5833215, at *4-5 (Fed. Cl. Dec. 9, 2021) (explaining that property seized by a prison as part of a search for contraband is not eligible for compensation under the Fifth Amendment). Rather, according to Mr. Villalobos's pleadings, the prison was supposed to temporarily store his property while he was in the special housing unit and return it upon his release. ECF No. 25 at 2-3 [¶7]. Mr. Villalobos alleges that the government instead put it to public use. *E.g.*, *id.* at 5 [¶16]. That plausibly alleges a taking, rather than an exercise of the government's police power.

The government further argues that the court lacks jurisdiction over Mr. Villalobos's complaint because the administrative remedy provided by 31 U.S.C. § 3723 is the only relief Congress authorized for prisoners with small claims whose property is lost or damaged due to the "negligence of an officer or employee." ECF No. 28 at 8 (citing 31 U.S.C. § 3723(a)(1)). As discussed above, the court finds that Mr. Villalobos plausibly alleges that his effects were not lost or damaged—which would amount to a tort—but instead were intentionally put to use in the prison library and in the receiving and discharge department. ECF No. 25 at 5 [¶16]. Thus, the government's argument based on section 3723 does not undermine the court's jurisdiction.

7

### C.   Mr. Villalobos plausibly alleges that the prison's confiscation and distribution of his property was for a public purpose

The government also argues that Mr. Villalobos fails to allege a taking because he has not alleged any public purpose in the prison's use of Mr. Villalobos's items in the library or its distributing them to other prisoners. ECF No. 28 at 11-13.

According to the complaint, the prison placed at least three of Mr. Villalobos's books in the prison's library for all inmates to use. ECF No. 25 at 6-7 [¶¶22-25]; ECF Nos. 15-4, 15-5, 15-6. Items available in libraries are generally available for public use. *See SRI International, Inc. v. Internet Security Systems, Inc.*, 511 F.3d 1186, 1195-96 (Fed. Cir. 2008) (discussing libraries as places where the public can access documents and information, in the context of public availability for patent prior-art purposes); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129-30 & n.12 (10th. Cir. 2012) ("public libraries provide … public access," in the context of a public forum for free-speech purposes).

Even though prison libraries are available only to a segment of the population, that does not undermine their public nature for takings purposes. In the patent context, the Federal Circuit has repeatedly held that documents available only to a segment of the population—such as documents held at a university library or provided to attendees as a particular conference—are publicly available. *See, e.g.*, *In re Hall*, 781 F.2d 897, 898-900 (Fed. Cir. 1986) (holding that a copy of a thesis that was held in a university library was publicly accessible); *GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 694-95 (Fed. Cir. 2018) (explaining that a publication distributed at a conference was publicly available); *see also Hamilton Laboratories v. Massengill*, 111 F.2d 584, 585 (6th Cir. 1940) (explaining that a document was publicly accessible when it "was put on file in the library of the college, available to students there and to other libraries having exchange arrangements with" the college). For that matter, any city public library's books are readily

available for checkout only to a segment of the population—those who are members of that library system. Those books are nevertheless unquestionably held for "public use." ECF No. 33 at 12:16-13:3 (government counsel stating that it "would be very difficult for the Government" to argue that placing taken books in a public library is not a taking).

Likewise, the Supreme Court has held that real property is taken is for "public use" even when the land will be open only to a segment of the public, if the government expects to receive tax revenue or other community benefits from the taking. *Kelo v. City of New London*, 545 U.S. 469, 478-80, 483 (2005). In *Kelo*, the Supreme Court held that the city's exercise of eminent domain power for economic development qualified as a public-use taking under the Fifth Amendment even though the condemned land would not be open to the general public. *Id.* at 478-80, 489-90. The Supreme Court has "rejected any literal requirement" that property taken by the government must "be put into use for the general public." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 244 (1984). "It is not essential that the entire community, nor even any considerable portion, directly enjoy" the taken property "for it to constitute a public use." *Id.* (quoting *Rindge Co. v. Los Angeles*, 262 U.S. 700, 707 (1923), marks omitted). Rather, the Supreme Court has long "embraced [a] broader and more natural interpretation of public use as public purpose." *Kelo*, 545 U.S. at 480 (marks omitted). The same principle applies in this case: While the prison library is not open to the broader public, it is open to the prison population for their benefit. Thus, placing Mr. Villalobos's books in the library qualifies a public purpose. Further, having Mr. Villalobos's books in the prison library, as he alleges, would allow the prison to spend less government money on books for its library, contributing to the public fisc.

The government cites *Human Rights Defense Center v. Bezotte*, No. 11-cv-13460, 2017 WL 1250683, at *14 (E.D. Mich. Mar. 31, 2017), which held that property made available to a jail

9

library is only being made available to a select segment of the population, not the public at large. ECF No. 31 at 5. But that reasoning appears contrary to the Supreme Court's reasoning in *Kelo* and is not binding on this court.

Mr. Villalobos also alleges that the prison placed some of his property in the receiving and discharge department for distribution to other inmates. ECF No. 25 at 5-6 [¶16-21]. The government argues that because Mr. Villalobos does not allege that that property was actually taken or used by another inmate, he fails to plausibly allege a taking. ECF No. 31 at 5. But to qualify as a taking, Mr. Villalobos's property must only be taken by the government for a public purpose, even if someone benefits in the future instead of right away. As the Supreme Court explained in *Kelo*, a government's condemnation of land for future use as part of a planned development project is still a taking. 545 U.S. at 477, 484 n.13; *see also Berman v. Parker*, 348 U.S. 26, 34-36 (1954) (holding that the government had the authority to take property for a planned future redevelopment). Regardless of when other inmates take and use Mr. Villalobos's items from the receiving and discharge department, Mr. Villalobos's allegation that the prison staff placed his property there for the purpose of distribution to and use by inmates is enough to plausibly allege a taking. As with the prison's library, even though the receiving and discharge department only serves the prison population, the placement of Mr. Villalobos's items in it qualifies as a public use for the purpose of the Fifth Amendment. *Kelo*, 545 U.S. at 478-90; *Hawaii Housing Authority*, 467 U.S. at 244. And the government benefits from that public use: It does not have to buy more clothes or other rewards for prisoners when theirs are lost or stolen or whom the prison wants to reward in some way.

Mr. Villalobos plausibly alleges that by taking his personal property and making it available for use in both the prison's library and the receiving and discharge department, the government put that property to public use.

### D.     The court will not consider, at this time, new arguments that were first raised at the oral argument

During the oral argument on the government's motion to dismiss, the government produced a new document and raised a new argument, neither of which were raised in its briefs. The document appears to be a memorandum, inventory checklist, and other supporting information from the prison denying Mr. Villalobos's lost property complaint. ECF No. 33 at 4:7-14. The new argument is, separately, that the court should dismiss Mr. Villalobos's complaint under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, because he did not exhaust all available administrative remedies. ECF No. 33 at 20:20-21:13. Mr. Villalobos's counsel did not have the opportunity to review or respond to the new document or argument or discuss either with Mr. Villalobos before the oral argument. The court will not consider either the document or the statutory argument at the motion-to-dismiss stage because they are untimely. Those can be addressed in discovery and, if relevant, in a future motion.

### III.    Conclusion

For the reasons stated above, this court **denies** the government's motion to dismiss.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen  
MOLLY R. SILFEN  
Judge